UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIE LeFAUCHEUR,

                      Plaintiff,

      -against-                                  1:11-CV-1000 (LEK)

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

                      Defendant.
_____

**MEMORANDUM-DECISION and ORDER**

**I.    BACKGROUND**

    **A.  Procedural History**

On June 29, 2009, Julie Ann LeFaucheur ("Plaintiff") filed a Title II application for Social Security disability insurance benefits. See Dkt. No. 14 ("Plaintiff's Brief") at 2. In her application, Plaintiff alleged that the onset of her disability was September 10, 2001, and the date she was last insured was December 31, 2006. Id. The Commissioner denied the applications on September 8, 2009, and on September 27, 2009, Plaintiff requested a hearing. Dkt. No. 12 ("Transcript").[2] A hearing was held on October 12, 2010, in Glens Falls, New York, before Administrative Law Judge ("ALJ") Terrance Farrel. Tr. at 24-60. Plaintiff, represented by counsel, appeared and testified at the hearing. Id. On January 21, 2011, the ALJ issued a decision finding that Plaintiff was not

---

[1] The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for Defendant Michael J. Astrue and amend the caption accordingly. See FED. R. CIV. P. 25(d).

[2] Citations to the Transcript use the numbers at the bottom of each page, which are consecutive across all portions of the Transcript, rather than the numbers affixed to the top of each page by the Clerk of the Court, which are consecutive only within each portion. See Dkt. Nos. 12-1 to -9.

entitled to disability insurance benefits because she was not disabled under the Social Security Act. Id. at 12. Subsequently, Plaintiff filed a timely request for an Appeals Council review. Pl.'s Br. at 2. The present action was commenced pursuant to § 205(g) of the Social Security Act, following the ALJ's decision that Plaintiff was not entitled to receive disability benefits. Id. The Commissioner interposed an Answer on December 19, 2011. Dkt. No. 11. Plaintiff filed a Brief in support of the present action on February 2, 2012. Pl.'s Br. Defendant filed a Brief in opposition on March 13, 2012. Dkt. No. 16. On July, 10, 2012, the Honorable Gary L. Sharpe, Chief United States District Judge, issued an Order terminating the referral of this case to the Honorable David R. Homer, United States Magistrate Judge, and directing the Court to decide this case without a Report-Recommendation. Dkt. No. 18.

### B. Medical Evidence

#### 1. Dr. David G. Welch

Dr. Welch of Adirondack Orthopedic Physicians and Surgeons ("Adirondack") treated Plaintiff for two and a half years, basing his evaluation on Plaintiff's visits in 2003 and 2004. Tr. at 401-13. During this time, Dr. Welch diagnosed Plaintiff with bilateral lateral epicondylitis, resulting in a moderate to marked degree of disability. Id. Dr. Welch determined that Plaintiff's restrictions would nonetheless permit her to perform light or sedentary work, provided the work did not involve repetitive activities, movement of the wrists, or "hand manipulation." Id. at 304. Throughout Plaintiff's treatment, Dr. Welch maintained that Plaintiff should not return to her past employment but could perform sedentary work that did not require repetitive use of her hands. Id. at 304, 376.

### 2. Dr. Carol S. Fisher

The record indicates that Dr. Fisher, also of Adirondack, evaluated Plaintiff on August 4, 1999 for pain she had been experiencing in her right heel. Dkt. No. 1-3 at 6. At the time of this evaluation, Plaintiff was employed and working long hours in steel-toed boots. Id. Dr. Fisher found Plaintiff's Achilles tendon swollen and the plantar fascia of her right foot tender. Id. Dr. Fisher opined that Plaintiff should avoid a job where she would be on her feet for the majority of the day; however, Plaintiff asserted that she was able to stand and walk for one hour at a time without pain. Tr. at 20, 446.

### 3. Dr. Robert G. Kercull

On August 31, 2001, Plaintiff was examined by Dr. Kercull, an orthopedic surgeon in Saratoga Springs, New York, for a problem she had been having with the "snapping in her left thumb." Dkt. No. 1-3 at 7. Plaintiff stated that her symptoms had improved, but Dr. Kercull told her that if the symptoms worsened, Plaintiff would be required to undergo surgery. Id.

Dr. Kercull examined Plaintiff again on December 12, 2001, and found that she had a number of ailments, including right lateral epicondylitis (tennis elbow), tendinitis of her right index and middle fingers, and capsulitis of her right shoulder. Id. Despite Plaintiff's diagnosis, Dr. Kercull opined that Plaintiff was capable of returning to work on a "modified or light duty basis full time," but should refrain from performing duties that required repetitive use of her right hand. Id. Additionally, Dr. Kercull tested Plaintiff's grip strength and determined it to be forty pounds in her left hand and twenty pounds in her right hand. Tr. at 289.

### 4. Dr. J. David Bannon

Plaintiff consistently received treatment from and was examined by Dr. Bannon in

Queensbury, New York. Dkt. No. 1-3 at 7. Plaintiff's primary complaint was stiffness in her left thumb, which Dr. Bannon treated initially with a splint and later with a Depo Medrol shot to provide Plaintiff with more rapid relief. Id. In March 2002, Dr. Bannon diagnosed Plaintiff with epicondylitis of the right elbow as well as tendinitis of the right wrist and hand; however, after performing an MRI of Plaintiff's hand, he determined she had no abnormalities. Tr. at 369-70. Plaintiff was referred to physical and occupational therapy for the conditions complained of, and Dr. Bannon opined that Plaintiff was capable of returning to work. Dkt. No. 1-3 at 7.

### 5. *Dr. Robert Sellig*

On June 4, 2003, over a year after she had ceased working, Plaintiff was examined by Dr. Sellig, an orthopedic specialist at Adirondack, for problems with both of her elbows. Dkt. No. 1-3 at 8. Dr. Sellig found that Plaintiff would be unable to return to her prior position but that she was capable of doing light to modified work that would not require her to lift more than twenty pounds or repetitively use her arms. Tr. at 288.

### 6. *Dr. Michael G. Holland*

In January 2005, Plaintiff was examined by Dr. Holland at the Center for Occupational Health in Glens Falls, New York, for pain in her hands and feet. Dkt. No. 1-3 at 9. Dr. Holland's examination revealed that Plaintiff had full motor strength in her extremities. He also found that her posture and gait were normal and she was able to balance on her heels and toes. Tr. at 320.

### 7. *Vocational Expert*

Esparanza Distefano testified during the administrative hearing that Plaintiff's prior employment consisted of unskilled, "medium exertional level" jobs. Id. at 28. Based on Plaintiff's limitations, Distefano stated that Plaintiff could not perform those prior jobs. Id. at 29. Distefano

then testified that an individual with Plaintiff's disabilities and limitations would be capable of performing sedentary, unskilled work of a low exertional level such as that of a new accounts clerk, a surveillance systems manager, or a file clerk. Id. at 29-31. All the jobs Distefano identified are available either in Plaintiff's home town of Glens Falls or in the Greater Capital District, which includes Albany, Schenectady, and Troy, New York. Id.

### C. Plaintiff's Testimony

During the administrative hearing, Plaintiff testified that she lives with her husband and daughter, both of whom are disabled, as well as her granddaughter. Id. at 7-8. Plaintiff also stated that she does all of the work around her house, including laundry, vacuuming, dusting, cooking, and doing dishes. Id. at 16. Additionally, she testified that she occasionally assists her husband in mowing the lawn, using a walk-behind power lawn mower. Id. at 20. Plaintiff drives to the grocery store about once every week or two; occasionally, her daughter will drive her instead. Id. at 20-21. Plaintiff reported that she assists in taking care of her three grandchildren, including getting them ready for school, preparing meals, and helping them with homework. Id. at 21.

Plaintiff testified that aside from the pain in her extremities, she is unable to work because she does not like being in crowded areas, does not get along with people, has no friends, and does not do anything. Id. at 23. Plaintiff asserted that she passed the General Educational Development equivalency exam but has no formal job or vocational training. Id. at 8. Plaintiff's most recent employment was at Tenneco, a protective packaging warehouse, where she performed a variety of activities including packing boxes, making boxes, loading trucks, and driving forklifts. Id. at 9-10. Plaintiff worked for Tenneco for approximately five years. Id. at 10. Plaintiff testified that prior to that job she had worked for the Army Air Force Exchange Service loading and unloading televisions

and grills from trucks as well as operating forklifts and dollies.  Id. at 11.  Plaintiff testified that as a result of the pain she experiences in her hands and feet, it is difficult for her to lift heavy objects and open bottles and jars.  Id. at 12.

## II. STANDARD OF REVIEW

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Instead, a reviewing court will reverse the Commissioner's determination only if the correct legal standards were not applied or the determination was not supported by substantial evidence.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see also Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

The substantial-evidence standard requires evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp.

147, 153 (S.D.N.Y. 1992). The Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.[3] See 20 C.F.R. §§ 416.920, 404.1520. The U.S. Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and the five-step process remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42 (1987). While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of the inquiry is, in

---

[3] This five-step process is detailed as follows:
> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

### III.   DISCUSSION

#### A. Commissioner's Decision

In his decision, the ALJ reviewed the available evidence and medical records. First, the ALJ determined that Plaintiff met the insured-status requirement of the Social Security Act through December 31, 2006, and had not engaged in substantial gainful activity during the period of September 10, 2001, her alleged onset date, through her last-insured date of December 31, 2006. Tr. at 14. However, the ALJ noted that through her last-insured date, Plaintiff had the residual functional capacity ("RFC") to "occasionally lift, carry, push, and pull 10 pounds; frequently lift, carry, push, and pull less than 10 pounds; stand and walk for six hours in a workday with normal breaks; [and] sit for six hours in a workday with normal breaks." Id. at 17. Second, the ALJ determined that Plaintiff's right heel spur, history of plantar fascitis, bilateral wrist and hand pain with possible carpal tunnel syndrome, lateral epicondylitis, left upper extremity numbness and tingling, major depressive disorder, and obesity imposed more than minimal interference with Plaintiff's ability to perform work-related activities sufficient to establish the threshold severity. Id. at 14-15. Third, the ALJ found that through her last-insured date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. Id. at 15. Finally, after

reviewing the entire record, the ALJ determined that Plaintiff had the RFC to perform simple work. Id. at 17.

The ALJ followed a two-step process in considering Plaintiff's symptoms: first, he determined whether there was an underlying determinable physical or mental impairment that could reasonably be expected to produce the Plaintiff's pain or other symptoms; and second, he evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit her functioning. Id. The ALJ observed that although Plaintiff has multiple severe impairments that more than minimally interfere with her ability to perform work-related activities, the degree of her alleged disability is not reflected in the record. Id. at 18. According to the ALJ, this is because Plaintiff has proven only infrequent visits to her doctors for her allegedly disabling symptoms and minimal treatment throughout several years of her claimed disability. Id. Furthermore, Plaintiff did not seek medical treatment from any hospital emergency rooms at which she would have been treated despite lacking health insurance. Id. The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her impairments and symptoms inconsistent with the RFC assessment and her treating physicians' determinations. Id. at 19.

### B. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision in this case should be reversed for two reasons. First, Plaintiff asserts that the ALJ's conclusion that Plaintiff had a RFC prior to her last-insured date of December 31, 2006, is not supported by substantial evidence. Pl.'s Br. at 1. Second, Plaintiff argues that the ALJ did not sufficiently consider or discuss Plaintiff's obesity when determining Plaintiff's RFC. Id. The Court addresses these claims in turn.

*1. Plaintiff's RFC prior to December 31, 2006*

The Social Security Act outlines a five-step evaluation process to be used by an ALJ in determining whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step four of the analysis, an ALJ must determine a plaintiff's RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(e). RFC is:

> what an individual can still do despite his or her limitations . . . .Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.

Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)). In assessing the RFC of an individual, an ALJ must consider the individual's impairment "and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the individual] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). Accordingly, an ALJ must assess the RFC based on all relevant and medical evidence in the record. Id. §§ 404.1520(e); 404.1545(a)(3). Ultimately, the RFC is used to determine whether an individual can perform past work. Id. § 404.1545(a)(5)(i). If, however, the individual cannot perform past work, then an ALJ uses the RFC at step five to evaluate whether the individual can perform other work that exists in the national economy. Id. § 404.1545(a)(5)(ii).

At step five, the burden of proof shifts to the Commissioner to show that "there is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F. 3d 75, 80 (2d Cir. 1998). An ALJ's determination at step five consists of two parts. First, she must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). Second, she must determine

whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 404.1520(g).

In this case, the ALJ determined that Plaintiff had the RFC to do "simple work" based on her ability to "occasionally lift, carry, push, and pull ten pounds; frequently lift, carry, push, and pull less than ten pounds; stand and walk for six hours in a workday with normal breaks; sit for six hours in a workday with normal breaks; and frequently but not continuously handle and finger [objects]." Tr. at 17.  In considering Plaintiff's testimony and the evidence on the record, the ALJ concluded that although Plaintiff has the ailments and symptoms she complains of, she is still capable of performing some light work.  Id. at 21.  The ALJ agreed with Plaintiff's claim that she is unable to perform any relevant past work, as it exceeds her limitations and RFC.  Id.  However, the ALJ, considering the testimony of the vocational expert, concluded that based on Plaintiff's RFC, age, education, and work experience, Plaintiff is "capable of making a successful adjustment to other work that exist[s] in significant numbers in the national economy."  Id. at 23.

Plaintiff maintains the ALJ erred in his determination of her RFC.  Plaintiff asserts that the ALJ discounted the intensity, persistence, and limiting effects of her symptoms.  Pl.'s Br. at 9. Plaintiff contends that contrary to the ALJ's determination, she received "extensive, ongoing, but unsuccessful treatment" prior to her last-insured date of December 31, 2006.  Id.  Plaintiff reiterates that her activities are largely confined to her home and that it takes her significantly longer to complete tasks that she must perform in short intervals.  Id. at 10.

Additionally, Plaintiff claims that the ALJ failed to weigh the opinion of psychologist Dr. Terri L. Bruni, who found that Plaintiff is moderately limited in her "ability to complete a normal work day without interruption from psychologically based symptoms and to perform at a consistent

11

pace without an unreasonable number and length of rest periods." Id. at 11. Even taking Dr. Bruni's opinion into account, however, the Court concludes that the ALJ's finding that Plaintiff had an RFC prior to her last-insured date and was capable of performing light work is supported by substantial evidence.

### 2. *Plaintiff's Obesity*

Plaintiff argues that the ALJ failed to consider Plaintiff's morbid obesity when evaluating her RFC. Pl.'s Br. at 1. Specifically, Plaintiff asserts that the ALJ did not adequately address why Plaintiff's obesity and depression, coupled with the pain she experiences in her extremities, impede her ability to perform light work without extensive breaks. Id. at 11.

As Plaintiff acknowledges, obesity was removed from the listing of impairments in the Federal Register in 1999. Id. at 12; SSR 02-1P, 2000 WL 628049, at *1. Obesity was not considered to be a "limitation which would prevent an individual from engaging in any gainful activity," but it should nonetheless be considered in terms of "the potential effects it has on causing or contributing to impairments in th[e] body systems." SSR 02-1P, 2000 WL 628049, at *1. It should be a factor weighed by adjudicators when evaluating an individual's disability and should be done at all steps of the five-step evaluation process, "including when assessing an individual's [RFC]." Id.

The ALJ briefly stated that although it is likely that Plaintiff's obesity may further limit her ability to perform work-related activities, "the evidence does not support a finding that she is more limited than that found in the established residual functional capacity." Tr. at 21. The ALJ's failure to elaborate further and address Plaintiff's obesity when determining her residual functional capacity supports Plaintiff's assertion that the ALJ's determination at all steps of the evaluation process is

not supported by substantial evidence. Therefore, the Court remands this matter to the ALJ to provide a complete analysis of how Plaintiff's obesity would affect her RFC at all five steps.

### C. Remand

Pursuant to § 405(g) of the Social Security Act, district courts have the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). The instant case is remanded due to the ALJ's failure to consider and assess Plaintiff's obesity and the effect it has on her existing ailments. Accordingly, the ALJ's failure to provide sufficient reasoning on the record leads the Court to conclude that the ALJ's final determination on Plaintiff's disability is not supported by substantial evidence.[4] On remand, the ALJ is required to review the record and provide a basis for his conclusion on this issue.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **VACATED** and that this case is **REMANDED** for further proceedings consistent with this Memorandum-Decision and Order; and it is further

---

[4] Although the Social Security Commission removed obesity from the listing of impairments, it is nonetheless considered to be "a medically determinable impairment" and adjudicators are reminded that its effects should be considered when evaluating a claimant's disability and throughout the sequential evaluation process. SSR 02-1P, 2000 WL 628049, at *7; accord Cornell v. Astrue, 764 F. Supp. 2d 381 (N.D.N.Y. 2010) (Kahn, J.) ("When considering whether a claimant's impairments meet or equal one or more of the conditions listed in the regulations, an ALJ must consider the claimant's obesity and its effects in combination with any musculoskeletal impairments.").

**ORDERED**, that the Clerk of the Court substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for Defendant Michael J. Astrue and amend the caption accordingly; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties by regular mail.

**IT IS SO ORDERED.**

DATED:      March 29, 2013
            Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge